IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

United States of America,    )
                            )
            Plaintiff,       )
                            )
vs.                         )
                            )
Shane Twigg,                )
                            )
            Defendant(s).    )
_____ )

Case No.    A-05-0041 Cr. (RRB)

## NON-OPPOSED AND JOINT MOTION TO AMEND PRE-SENTENCE REPORT AND NOTICE OF PARTIAL SENTENCING AGREEMENT

Defendant, Shane Twigg, by and through counsel, Robert M. Herz, of the Law Offices of Robert Herz, P.C., hereby moves to amend and/or vacate certain portions of the final pre-sentence report. In addition, the parties give notice to the court that an agreement has been reached regarding the number of months of imprisonment that should be imposed in this case as well as the length of supervised release. This motion is non-opposed and joined in by the government.

Furthermore, in consideration of these changes to the pre-sentence report, and the agreement regarding sentencing, the defendant will be waiving certain evidentiary, factual and legal challenges to issues raised in his pre-sentence report and/or affecting his sentencing guideline calculation that were reserved as a consequence of entering a change of plea.[1]

1. Amendments/Changes to the Pre-Sentence Report.

The parties agree and stipulate that paragraphs 16, 50 and 51 of the final pre-sentence report shall be deleted from and that an amended final pre-

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

sentence report shall be issued.  This agreement eliminates the taking of testimony, inconvenience and costs to witnesses, some who are outside the jurisdiction of the United States, and use of judicial resources to resolve these factual issues.

A summary of the issues and facts are presented below.  A review of the defendant's juvenile file reflects the following.  On May 3, 1999 the juvenile court had before it a proposed resolution of the then pending juvenile charges.  The court indicated its concern about the alleged charges in Canada and indicated that perhaps the minor should be sent back to Canada to face those charges.  The court directed the state of Alaska through the Attorney General's office to investigate the matter and make a determination.  On June 1, 1999, the Juvenile Probation officer reported that Canada did not want to prosecute the case.  Also on that date, the Assistant Attorney General, Karen Hawkins reported that Canadian authorities admitted that it was "not a really strong case," and that the state of Alaska had no concerns about the warrant that had been issued in Canada.  Another report in the juvenile file indicated that insufficient evidence existed to prosecute the case.  Later information and investigation reflected that other adult family members held serious doubts about the credibility of the initial reports made by the cousins, since the children had made similar allegations about other family members that were investigated and found to be false as well.

Additionally, various juvenile records, and reports by family members revealed that while on release for this alleged conduct, Shane was supposedly in the care and custody of his natural/biological father.  Shane's living conditions were primitive, with no electricity or water and little available food.  The homesite was miles away from town and Shane had no adequate transportation and was frequently left

---

[1] There was no written plea agreement entered into by the parties prior to the change of plea hearing.

alone.   Apparently, Shane's father forced Shane, at age fourteen, to act as a "mule" and consummate small marijuana transactions for him, by delivering marijuana to buyers and collecting the sales money.   The police caught Shane engaging in this conduct.   After this his father kicked Shane out the house, despite the father's promise to the court to supervise Shane.   Shane was living on the street, had no food, and was sick.   His grandmother, Patricia Whitford, who lived across the border in Montana found out about Shane's neglect, and traveled to Canada, and brought Shane back to Montana to live with her.   Immediately, upon returning to the United States, Ms. Whitford took Shane to the hospital due to his poor health.   Thereafter, he lived with his grandmother for over a year and half without incident.   See also paragraphs 54 and 55 of the final pre-sentence report.

The parties agree that there exist no more than mere allegations in this matter.   Rather than engage in extensive fact finding at considerable costs, the parties agree to amend the pre-sentence report.   The fact that Canada acknowledged that insufficient evidence existed, and that the case was weak; and that the minor did not "flee" the jurisdiction at age fourteen, but in fact was in a state of neglect and was "rescued" by his grandmother counsel heavily favor of such a resolution.   The parties agree that inclusion of these paragraphs in the pre-sentence report under these circumstances is not appropriate, and likely would have an adverse and unjustifiable affect on the defendant within the Bureau of Prisons and later while on supervised release.   Hence, the parties agree that the final PSR accordingly should be amended to delete these two paragraphs.

The parties agree and stipulate to amend paragraph 16 to note the additional facts:  "the ATF agent noted in his report submitted two days after his medical examination that he suffered 'a puncture wound caused by a tooth.' The ATF

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600  •  Anchorage, AK 99501
Phone 907-277-7171  •  Fax 907-277-0281
E-mail rmherz@gci.net

agent did not indicate in his report at that time any belief that he had been bitten by the defendant and the defendant has denied biting the ATF agent. A review of the photograph of the injury depicts an injury consistent with a single tooth mark on the second knuckle of the index finger. No other abrasions, lacerations, or other marks being visible. This injury appears consistent with the agent inadvertently striking a tooth while punching the defendant in the face 5 or 6 times."

2. Waiver of Guideline Calculation Arguments.

At the change of plea hearing Mr. Twigg specifically admitted conduct that constituted "opposing, impeding or interfering" with an arrest, and did not admit conduct that constituted "forcibly assaulting, resisting or intimidating," a federal agent. One of the key issues at sentencing would be the nature and extent of the injuries in this case, and hence, the proper application of sentencing guideline U.S.S.G. sec. 2A2.4(b)(2), which increases the base offense level by two levels where "bodily injury," occurs. The government noted at the change of plea hearing that a sentencing range of 24 to 30 months appeared appropriate but that the government's sentencing recommendation would depend heavily on the nature and extent of the injury. The sentencing agreement in this case eliminates the necessity of taking testimony and using judicial resources to resolve this issue and others.

Mr. Twigg will set out below, in summary fashion, the argument that Mr. Twigg is waiving. The United States Sentencing Guidelines provides a definition of "bodily injury." USSG § 1B1.1, Application Note 1(B) provides: " 'Bodily injury' means any *significant* injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." At sentencing Mr. Twigg would have put on evidence to demonstrate that the facts, even in a light most favorable to the Government, do not establish bodily injury in this case, because the

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

injury was not significant but merely minor, not requiring medical attention. For instance, the agent in this case did not realize he was injured for some time. According to agent McCole's own report, at no time after securing Mr. Twigg at the place of arrest did agent McCole realize he had been hurt. At no time during transporting Mr. Twigg to the jail did agent McCole realize he had been hurt. At no time during the booking process and the medical screening process did agent McCole realize he had been hurt. Only after leaving the jail facility, which represents a considerable passage of time, did agent McCole first realize he had a cut on his arm or a mark on his knuckle. These facts suggest that the injuries in this case are not significant since they were not "painful and obvious."

Additionally, these were not the types of injuries that ordinarily would require medical attention. Agent Guinn wrote in his report that he took agent McCole to the doctor for "treatment and evaluation,"[2] or in other words treatment and diagnosis. Courts interpreting this guideline have noted that the mere fact medical attention is provided is not dispositive. For example, if the medical attention is provided mainly for diagnosis and treatment, bodily injury is not established. *United States v. Harris*, 44 F.3d 1206, 1218 (3rd Cir. 1995); *United States v. Lancaster*, 6 F.3d 208, 210 (4th Cir. 1993).

Indeed, the injuries were minor not significant. Agent Guinn noted swelling in agent McCole's right arm. McCole told Guinn that he had a cut on his arm, a puncture on his knuckle, and that his back felt "stiff." However, agent McCole in his report submitted two days later did not complain of any lingering pain, and did

---

[2] Another factor that should be considered is that the decision to seek formal treatment and to document injuries, even though the injuries are minor in nature, would have been necessary establish rights later to worker compensation or to insurance benefits.

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

not even mention any injury to his back. He noted only the cut and puncture and that he was given antibiotics. The doctor's report noted that the wound was cleaned, that polysporin was applied, that he was given a prescription for an anti-biotic and told to take an anti-inflammatory, presumably for any swelling. The defense would have argued that the photographs depict minor injuries. In fact, Mr. Twigg would have argued that most parents, if not all, would treat similar injuries to a child, right at home not by going to a doctor. Most parents would clean the cut on the arm and would clean the "skinned" knuckle, perhaps put polysporin on each one, and maybe a Band-Aid on the arm, and then give the child Tylenol. The injuries in the present case, Mr. Twigg would have argued, do not meet the standards of significant, obvious injuries where pain lingers beyond 24 hours. *See United States v. Greene*, 964 F.2d 911 (9th Cir. 1992).

However, rather than engage in litigation regarding this issue, and use valuable judicial resources, and inconvenience witnesses, the parties have agreed that Mr. Twigg will serve 30 months in prison and be on supervised release for one year.[3] Mr. Twigg is specifically waiving his right to argue for a sentence of 24 months or less and gives up all his appeal rights.[4] Mr. Twigg has also agreed to waive any additional guideline calculation arguments, including arguments concerning the Criminal History Category calculations. If Mr. Twigg had prevailed on the above argument alone, even assuming a CHC of VI, the low end of the sentencing range would have been 27 months. The low end of the sentencing range as recommended

---

[3] This agreement conforms with the terms of 18 U.S.C. sec. 3583(b)(2) which provides that a period of supervised release for this offense can range anywhere from 0 to 3 years.

[4] Mr. Twigg also gives up his right to appeal the denial of him motion to dismiss count one of the indictment (see Doc. No. 26), wherein he argued that his conduct constituted a misdemeanor, not a felony, since he did not inflict "bodily injury" as that term is applied in the statutory scheme. See, Doc. No. 26 at 10-13.

in the pre-sentence report is 33 months.  The agreement here splits that difference

and is the maximum amount of time that was contemplated by the government as

indicated at the change of plea hearing.[5]  Under the circumstances, and terms of 18

U.S.C. sec. 3553, Mr. Twigg agrees that this sentence is sufficient but not greater

than necessary to comply with the purposes set forth in the sentencing statute and is

a fair and reasonable sentence.

DATED at Anchorage, Alaska, this 28 th day of November, 2006.

LAW OFFICES OF ROBERT HERZ, P.C.


s/ Robert M. Herz
425 G. Street, Suite 600
Anchorage, Alaska  99501
Phone 907-277-7171
Fax 907-277-0281
rmherz@gci.net
AK Bar No. 8706023

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

CERTIFICATE OF SERVICE
The undersigned hereby certifies that on the 28 th day of November-2006, a true and correct copy of the Reply To Government's Opposition To Defendant's Motion To Dismiss Indictment & Order was faxed/mailed/hand delivered to the following: AUSA By: _____

[5] The parties indicated to the court at the change of plea hearing that an appropriate sentence likely would be in the range of 24 to 30 months.