IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Shane Twigg, | ) |
| | ) |
| Defendant. | ) |
| ———————————————— | ) |

Case No.    A-05-0041 CR (RRB)

## SENTENCING MEMORANDUM

A period of excludable delay under 18 U.S.C. 3161(h)(1)(F) may occur as a result of the filing/ granting/denying of this motion

Defendant, Shane Twigg, by and through counsel, Robert M. Herz, of

the Law Offices of Robert Herz, hereby files this sentencing memorandum.

This case involves an allegation that Mr. Twigg opposed, interfered or

impeded an arrest being performed by a federal officer and that in the course of

making that arrest allegations that the officer was injured.   Mr. Twigg is before the

court for sentencing on count 1 of the indictment that encompasses this allegation.

Mr. Twigg pleaded guilty to the charge and there was no plea agreement entered into

by the parties at the time of the change of plea.  At the change of plea hearing the

parties indicated that an appropriate sentencing range in this case appeared to be 24

to 30 months, but a final recommendation would be based upon a number of issues

that would be reserved for litigation at the time of sentencing.

In an effort to conserve judicial resources, and resolve some of these

disputed issues, since the time of the change of plea, the parties have been able to

1

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

agree that an appropriate sentence in this matter would be 30 months with one year of supervised release. See, Non-Opposed and Joint Motion to Amend Pre-Sentence Report and Notice of Partial Sentencing Agreement. Mr. Twigg would urge the court to sentence him in accordance with this agreement.

Post-*Booker* the government has urged the courts to give "substantial weight" to the sentencing guidelines. Some courts have shown themselves inclined to do so. However, this sentencing practice would make the guidelines as binding as before *Booker,* and would thus violate the sixth amendment and the interpretation of section 3553 adopted by the remedial majority in *Booker.* Mr. Twigg maintains that a court has much more discretion to decide what a "fair and reasonable" sentence may be in a particular case.

In any event, the government's "weighted approach" in effect makes the guidelines binding, thereby, triggering the sixth amendment. Hence, to the extent the court relies on the methodology suggested by the government, the court is obliged to enhance a sentence only if it relies solely on facts proven to a jury beyond a reasonable doubt or admitted by the defendant. This court must base all guideline adjustments on facts proven beyond a reasonable doubt.

While Mr. Twigg makes any waiver of any objection to the any portion of the final pre-sentence report and advisory guideline calculation as presented by the USPO, contingent upon the court accepting and consistent with the proposed sentencing agreement and agreed upon amendments to the final PSR as set forth in the Non-Opposed and Joint Motion to Amend Pre-Sentence Report and Notice of Partial Sentencing Agreement.

2

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

Mr. Twigg does note that for sentencing purposes the pre-sentence report is incomplete because it does not include all information relevant to section 3553(a) purposes and factors. To that end, the court can and should consider "other known facts" about this case which support the finding that the agreed upon sentence is "fair and reasonable."

It is misleading to some extent to suggest that Mr. Twigg "fled" or was "chased" or "pursued" down a hallway. The images these words convey do not accurately portray reality. The total distance down the hallway from the bedroom doorway threshold to the kitchen is a mere four feet. The hallway is narrow being only three feet wide. Imagine two men, both weighing at least 230 pounds, standing in this hallway. The distance from the threshold where Mr. Twigg was being handcuffed to the bi-fold doors is about two feet or less than one full stride. The bi-fold doors are at the beginning of the hallway, just off the bedroom. The bi-fold doors open into a shallow 18" deep pantry not a "closet." Agent McCole states that as he was handcuffing Twigg he was pushed aside into the doorjamb. So Twigg and McCole were standing in the doorjamb/hallway at the time. Trooper Vic Aye states that McCole caught Twigg at the "beginning of the hallway", which is consistent with where the bi-fold doors are located. So essentially, Twigg only took one step. Agent McCole tackled Mr. Twigg in one stride. This hardly amounts to a "chase" or "foot pursuit" as those words normally are used.

The momentum of the two men is forward down the hallway. Mr. Twigg is being tackled from behind as he is moving in a forward motion. Despite Agent McCole's rendition that Mr. Twigg landed on top of him, the physics of the situation

3

strongly suggest that this did not happen. There is no question that the men crashed into the bi-fold doors. A scene investigation shortly afterward confirmed that damage. It is likely that Agent McCole's arm was cut when he crashed through the doors as he tackled Twigg. What is significant is that Twigg did not intentionally injure Agent McCole. This was an accident and inadvertent. Mr. Twigg did not use a weapon and did not "inflict" the injury within that word's usual and customary meaning. Agent McCole's skinned knuckle occurred as the Agent punched Mr. Twigg in his face. Mr. Twigg did not "inflict" this injury either. Again, this was not intentional conduct, but rather was an inadvertent result. These circumstances lend additional support to the court's decision to abide by the parties' agreement, and that the sentence is fair and reasonable in this case.

Agent McCole claims that his motivation for increasing his use of force, at least in part, was his awareness that Demetric Williams was behind him and that McCole did not know if or when he would attempt to assist Twigg. However, Trooper Vic Aye in his report states that Williams was downstairs at the time, and an interview with Williams confirms this. Agent McCole portrays this arrest of Mr. Twigg as a dramatic "life and death" struggle. Trooper Aye's version of events is much more mundane and routine. Aye never reports that Twigg did anything to harm McCole. Aye twice describes Twigg's conduct as attempting to free himself from McCole's grasp. Aye describes McCole as attempting to gain control of Twigg. No report by any officer indicates that after Twigg is handcuffed in the hallway that Twigg thereafter resisted or caused any additional trouble. Yet, the scene investigation, and statements by the homeowner, Paul Durfee, revealed that the stove in the

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

kitchen was dented and blood spatter was found on the walls, floor and ceiling of the kitchen.

This suggests that Twigg at a minimum was handled roughly in the kitchen area after being secured. Trooper Aye does indicate in his report that Twigg is brought to the kitchen after he is secured in the hallway. Twigg claims that he never took any actions to harm McCole, and this was a fairly routine "resisting" case, and that McCole's hitting him repeatedly in the face was unjustified use of force after he had already been secured. He told McCole he was going to "bring charges against him for assault." Twigg alleges that McCole said that he would press charges first, and when Twigg said "for what?" McCole replied for "assault." When Twigg protested and said that he had not assaulted him, McCole allegedly replied, "who's the judge going to believe."

Certainly, the injuries that Twigg sustained were far worse than anything that McCole sustained. Kelly Snead testified to the extent of these injuries before the Magistrate and they are documented by the jail's medical report. The injuries included a split/cut on his left lip in two places; a large bruise on Twigg's cheek; a swollen left jaw with bruises and abrasions; a broken crown and cracked tooth. Ms. Sneed stated that several days later that Twigg's face was bruised, swollen and black and blue, which was confirmed by Mr. Twigg's state public defender that saw him about the same time. Whether justified or not, whether the court regards this as "rough justice" or not, the court can consider the severity of Mr. Twigg's injuries, and the minor nature of Agent McCole's injuries as another factor that supports the sentence in this case as "fair and reasonable."

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

The guidelines are only one of seven equally important factors that the court must consider in determining a sentence that is "sufficient, but not greater that necessary," to comply with the purposes of sentencing set forth in 3553(a)(2).  One of the goals of sentencing to be achieved is to provide a defendant with the rehabilitation he needs.  3553(a)(2)(D).  At the same time, 18 U.S.C. 3582(a) requires the court to "recognize [that] imprisonment is not an appropriate means of promoting correction or rehabilitation."  Indeed, Mr. Twigg urges the court not to conclude that he is beyond rehabilitation or that prison has not deterred him.  Far from it.  His prior experiences have convinced him that he does not want to spend the majority of his adult life in prison.  He wants to work and live life in a lawful manner. He has been afforded a great opportunity to join his brother in Missoula Montana in owning and running the "Cattle Baron."  A high end restaurant on the outskirts of Glacier National Park.  Presently, his uncle Bob Burns runs this establishment but he is planning on retiring.  He has agreed to the sell the restaurant to the boys, and his grandmother has agreed to help finance the sale.   Mr. Twigg recognizes the value of this opportunity, and the tremendous support of his family.  Mr. Twigg recognizes that this job opportunity, and the structure it brings, as well his family's support will be prove beneficial and important to his rehabilitation.  The fact that this job and family support structure exists is an important factor for the court to consider.

Certainly after considering all of the factors set forth above, and in 18 U.S.C. 3553, a sentence of 30 months with one year of supervised release in this matter is reasonable and appropriate.  Mr. Twigg respectfully requests the court to

sentence him in accordance with the agreement he has reached with the government.

DATED at Anchorage, Alaska, this 28TH day of November, 2006.

LAW OFFICES OF ROBERT HERZ, P.C.

s/ Robert M. Herz
425 G. Street, Suite 600
Anchorage, Alaska  99501
Phone 907-277-7171
Fax 907-277-0281
rmherz@gci.net
AK Bar No. 8706023

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 28th day of November 2006, a
true and correct copy of the aforementioned Memorandum
was faxed/mailed/hand delivered to the following:

AUSA

By:

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net